166.   By their wrongful actions, Defendants Klein and Lalvani furthered the intended fraud, obtained unauthorized use of Starwood's protected computer system, and obtained Starwood's proprietary information, the value of such exceeding $5,000 in value in any one year period.

167.   The wrongful conduct of Defendants Klein and Lalvani was done with inducement from and with the knowledge and participation of Defendant Hilton, and/or for the benefit of Defendant Hilton such that Hilton is equally responsible for the wrongful conduct of Klein and Lalvani.

168.   By their wrongful actions, Defendants Hilton, Klein and Lalvani intentionally accessed Starwood's protected computer system without authorization, and as a result of such conduct, caused Starwood damage and loss.

169.   The wrongful actions of Defendants Hilton, Klein and Lalvani have caused loss to Starwood that exceeds $5,000 in value during any one year period, in that Starwood has spent far in excess of $5,000 in responding to the offense and conducting a damage assessment.

170.   The activity of Defendants Hilton, Lalvani and Klein constitutes a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C.A. § 1030(a)(2)C), (a)(4), (a)(5)C), and Starwood is entitled to full compensatory damages under that Act.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Starwood Hotels & Resorts Worldwide, Inc. prays for the following relief:

(i)    preliminarily and permanently enjoining Defendants Hilton, Klein and Lalvani and their respective officers, agents, servants, employees and attorneys, and all other persons who are in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from using or benefiting, directly or indirectly, from the use of Starwood's confidential, proprietary and trade secret information, including without limitation the Starwood Confidential Information;

(ii)   preliminarily and permanently enjoining Defendants Hilton, Klein and Lalvani and their respective officers, agents, servants, employees and attorneys, and all other persons who are in active concert or participation with them who receive actual notice of the order by personal service or otherwise, immediately to return all Starwood Confidential Information in their possession, custody or control;

(iii)  preliminarily and permanently enjoining Defendants Hilton, Klein and Lalvani and their respective officers, agents, servants, employees and attorneys, and all other persons who are in active concert or participation with them who receive actual notice of the order by personal service or otherwise, immediately to destroy and to certify under oath the destruction of all materials derived in any way directly or indirectly in whole or in part from any Starwood Confidential Information;

(iv)   preliminarily and permanently enjoining Defendants Hilton, Klein and Lalvani and their respective officers, agents, servants, employees and attorneys, and all other persons who are in active concert or participation with them who receive actual notice of the order by personal service or otherwise, immediately to destroy and to certify under oath the destruction of all documents and information relating to the promotion and roll-out of Hilton's Denizen brand — thus requiring Hilton to start over without the benefit of its theft of Starwood Confidential Information;

(v)    preliminarily and permanently enjoining Defendants Hilton, Klein and Lalvani and their respective officers, agents, servants, employees and attorneys, and all other persons who are in active concert or participation with them who receive actual notice of the order by personal service or otherwise, to impose a constructive trust on and provide a detailed accounting of all revenues derived and expenses saved by Hilton from the use of the Starwood Confidential Information;

(vi)   preliminarily and permanently enjoining Defendants Hilton, Klein and Lalvani and their respective officers, agents, servants, employees and attorneys, and all other persons who are in active concert or participation with them who receive actual notice of the order by personal service or otherwise, for a reasonable time from pursuing any hotel owners for hotel properties targeted in the locations iden-

tified in the Starwood Confidential Information as targeted for Starwood Luxury Brand Group properties; and

(vii)   preliminarily and permanently enjoining Defendants Hilton, Klein and Lalvani and their respective officers, agents, servants, employees and attorneys, and all other persons who are in active concert or participation with them who receive actual notice of the order by personal service or otherwise, for a reasonable time from negotiating with any investors with whom Starwood has current management contracts;

(viii)  ordering Defendants Hilton, Klein and Lalvani to disgorge all unjust enrichment as a result of their taking and use of Starwood Confidential Information;

(ix)    ordering Defendants Hilton, Klein and Lalvani, jointly and severally, to pay Starwood compensatory damages in an amount to be proven at trial;

(x)     ordering Defendants Hilton, Klein and Lalvani each to pay Starwood punitive damages in amounts to be proven at trial; and

(xi)    ordering such other and further relief as this Court deems just and proper.

Dated:  April 16, 2009

CAHILL GORDON & REINDEL LLP

By:  *Charles A. Gilman*

Charles A. Gilman
David G. Januszewski
Andrea R. Butler

80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Plaintiff Starwood Hotels & Resorts Worldwide, Inc.*

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all claims as to which it is so entitled.

By: _____
Charles A. Gilman

EXHIBIT 1



**STARWOOD**
HOTELS & RESORTS WORLDWIDE, INC.

May 9, 2005

David K. Norton
EVP, Human Resources

Ross Klein
c/o  Starwood Hotels & Resorts Worldwide, Inc.

Dear Ross,

The specifics of your assignment with Starwood Hotels & Resorts Worldwide, Inc., in connection with your promotion to President, W Hotels Worldwide, are outlined below·

**Start Date:**
Subject to the terms of this letter, your promotion with Starwood will be effective on May 1, 2005.

**Responsibilities:**
Initially, your position will be President, W Hotels Worldwide, and you shall perform such duties and services as are assigned to you by the Company as requested.  You shall devote your full time and attention to the affairs of the Company and to your job duties, and use your best efforts and abilities to promote Starwood's interests   You will initially be reporting to Steve Heyer, Chief Executive Officer, though the Company may make changes in your reporting structure title, and job responsibilities at any time.

In performing your duties, you will be expected to comply at all times with all Starwood policies, procedures and directives as they currently exist or as they may be adopted or changed from time to time.

**Base Salary:**
Your base salary will be $400,000 annually, paid in or semi-monthly intervals of $16,666.66, less applicable withholdings.   The Starwood salary program provides performance-based salary reviews for future salary progression.

**Annual Incentive (Bonus):**
You will be eligible to participate in the Starwood Annual Incentive Plan (AIP).  Your target incentive is 75% of base salary.  Your actual incentive award will be based upon a variety of factors including Company and division performance, and your achieving specified performance criteria to be established and approved with your manager   In the event that changes are made to any of the incentive plans, the changes will apply to you as they do other similarly situated employees of the Company.

Payment of your 2005 bonus (pro-rata) will be delivered according to the regular annual incentive plan payout schedule.  An annual bonus shall not be deemed earned by you until the Company has determined your entitlement to such bonus and only if you are employed by the Company at the time such bonus is payable in accordance with the Annual Incentive Plan (AIP) and Company practices. The Company does not pay pro-rata bonuses upon departure.


WESTIN


Sheraton


FOUR POINTS
Sheraton


ST. REGIS


LUXURY COLLECTION


W
HOTELS

1111 Westchester Avenue, White Plains, New York 10604-3500   Tel: 914 640 5253   Fax: 914 640 8146

2

**Long Term Incentive:**

You will be eligible to participate in the Starwood Long Term Incentive Compensation Plan ("LTIP"), subject to the terms and conditions of the plan, as it may be changed from time to time. This plan currently provides for the award of stock options and/or restricted shares at the Company's discretion to high performing executives. The actual number of shares granted, if any, will be based upon your performance.

**Benefits:**

Your original hire date will remain the same for benefit accrual purposes. If your promotion necessitates a change in medical plans, information will be provided to you after your new assignment begins.

**Resolution of Disputes:**

From time to time, disagreements and misunderstandings may arise concerning your job responsibilities, performance, compensation, benefits or other matters affecting your employment with Starwood, or one of its affiliated companies. We hope that we will be able to resolve such matters through normal discussions with your immediate managers or Human Resources representatives.

In the event those efforts fail, you and Starwood agree, except as may be prohibited by law or as otherwise excluded by the terms of the attached Mutual Agreement to Arbitrate (**Attachment A**), to submit any and all disputes relating to or arising out of this offer letter, your employment with Starwood or the termination of that employment to final and binding arbitration pursuant to the employment rules then in effect of the American Arbitration Association, which shall be the sole and exclusive remedy for such disputes. Accordingly, you acknowledge and agree that this offer of employment and the benefits provided herein are contingent upon your execution of the Mutual Agreement to Arbitrate provided to you herewith and incorporated herein by reference. **In the event that the Mutual Agreement to Arbitrate is determined by a court with appropriate jurisdiction to be unenforceable, you and Starwood Hotels & Resorts Worldwide, Inc. waive any right to a trial by jury on the claims that otherwise would have been subject to the Mutual Agreement to Arbitrate.**

**Employment Term:**

While Starwood looks forward to a long and mutually beneficial relationship with you, you should understand that there is no fixed duration for your employment. In accepting this offer, you acknowledge and agree that your employment with the Company is at will, and may be terminated by Starwood at any time, with or without notice and for any or no reason. By signing below, you acknowledge that except for this letter, there is not and shall not be any written contract between you and the Company concerning this offer of employment or your prospective employment, and that nothing in this letter guarantees employment for any definite or specific term or duration or any particular level of benefits or compensation

**Severance:**

In the event that Starwood terminates your employment for any reason other than cause, Starwood will pay to you twelve (12) months of your then current base salary, in a lump sum less all applicable withholdings (the "Severance Payment"), and it will periodically reimburse you for your COBRA expenses minus your last level of normal contribution for up to twelve (12) months

3

commencing on the termination date. The Severance Payment will be in lieu of any compensation, damage or remedy to which you might otherwise be entitled and will be subject to and conditioned upon (a) your continuing compliance with the Non-Solicitation, Confidentiality and Intellectual Property Agreement referred to below, and (b) your signing a written waiver and release of any and all claims against Starwood arising out of or relating to your employment with Starwood, in form and substance satisfactory to Starwood. You will not be eligible for any Severance Payment or COBRA reimbursement if you resign from your employment with the Company.

For purposes of this paragraph, "cause," shall mean (i) any material breach by you of any of the duties, responsibilities or obligations of your employment, or any of the policies or practices of Starwood; (ii) your failure or refusal to properly perform, or the habitual neglect of (both as determined by Starwood in its reasonable discretion and judgment), the duties, responsibilities or obligations of your employment, or to properly perform or follow (as determined by Starwood in its reasonable discretion and judgment) any lawful order or direction by Starwood; (iii) any acts or omissions by you that constitute (as determined by Starwood in its reasonable discretion and judgment) fraud, dishonesty, disloyalty, breach of trust, gross negligence, civil or criminal illegality, or any other misconduct or behavior that could (as determined by Starwood in its reasonable discretion and judgment), subject to civil or criminal liability or otherwise adversely affect the business, interests or reputation of Starwood or any of its affiliates.

**Other Conditions and Obligations:**
You acknowledge that you are not subject to any currently effective employment contract, or any other contractual or other binding obligations pursuant to which your employment or employment activities with or on behalf of the Company may be subject to any restrictions. Restrictions include, without limitation, any agreements or other obligations or documents relating to non-competition, confidentiality, trade secrets, proprietary information or works for hire. By signing this letter, you represent to Starwood that there are no agreements or arrangements, whether written or oral, in effect that would prevent or conflict with your full performance of your Employments duties and responsibilities to us.

As a further condition of this offer and your right to receive any of the benefits detailed herein, you agree to execute and be bound by the Non-solicitation, Confidentiality and Intellectual Property Agreement attached hereto (**Attachment B**) and incorporated herein by reference.

4

**No Other Assurances:**

You acknowledge that in deciding to sign this offer, you have not relied on any promises, commitments, statements or representations, whether spoken or in writing, made to you by any representative of the Company, except for what is expressly stated herein. This offer replaces and cancels all previous agreements, commitments, and understandings whether spoken or written, if any, that the Company or any representative of the Company may have made in connection with your anticipated employment.

You also acknowledge that this offer is intended as written, and that no marginal notations or other revisions to either this offer, the Mutual Agreement to Arbitrate, or the Non-solicitation, Confidentiality and Intellectual Property Agreement are binding on the Company unless expressly consented to in writing by the Executive Vice President, Human Resources or Starwood's General Counsel. This offer shall be construed, governed by and enforced in accordance with the laws of the State of New York, without regard to its conflicts of laws principles.

By signing and returning this letter, you confirm that this letter accurately sets forth the current understanding between you and Starwood and that you accept and agree to the terms as stated above.

Very truly yours,

David Norton
EVP, Human Resources
Starwood Hotels & Resorts Worldwide, Inc.

cc:  Personnel File

ACCEPTED AND AGREED TO:

_____          _____
Ross Klein                                                    Date

5

## MUTUAL AGREEMENT TO ARBITRATE

In order to gain the benefits of a speedy, impartial, and cost-effective dispute resolution procedure, and for good and valid consideration as covenanted below and in addition to any other consideration, and intending to be legally bound, Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") and I hereby agree that, except as otherwise provided herein, all disputes and claims for which a court otherwise would be authorized by law to grant relief, in any manner, that I may have, now or in the future, during or after my employment with Starwood, of any and every kind or nature whatsoever with or against Starwood, any of Starwood's affiliated or subsidiary companies, partners, joint venturers, owners of properties Starwood manages, and/or any of his, her, its or their directors, officers, employees or agents , or any disputes and claims that Starwood may have against me (collectively, "Claims"), shall be submitted to the American Arbitration Association ("AAA") to be resolved and determined through final and binding arbitration before a single arbitrator and to be conducted in accordance with the National Rules for the Resolution of Employment Disputes of the AAA. Starwood and I agree that the arbitrator will have the authority to grant motions dispositive of all or part of any Claim. Starwood shall be responsible for payment of all arbitrator compensation, AAA filing fees and AAA administrative fees, other than the initial AAA filing fee for which I will be responsible to pay up to a maximum of $500.00, or as otherwise required by law.

Any reference in this Agreement to Starwood also refers to all of Starwood's affiliated entities, benefit plans, the benefit plans' sponsors, fiduciaries and administrators, and all successors and assigns of any of them.

Starwood and I each have the right to representation by counsel with respect to arbitration of any dispute pursuant to this Agreement. Except as prohibited by law, at the request of either Starwood or me, the arbitration proceedings shall be conducted in confidence, and, in such a case, all documents, testimony, and records shall be received, heard, and maintained by the arbitrator in confidence, available for inspection only by me and Starwood, our respective attorneys, and experts, who shall agree, in advance and in writing, to receive all such information confidentially and to maintain the secrecy of such information until it shall become generally known. Both parties shall be allowed adequate discovery as part of the arbitration process, including reasonable access to essential documents and witnesses as determined by agreement or the arbitrator.

The arbitrator shall conduct a full hearing as to all issues and disputes not resolved by dispositive motion. At such hearing, the parties shall be entitled to present evidence and examine and cross-examine witnesses. The arbitrator shall issue a written decision revealing the essential findings and conclusions upon which any award is based. In addition, the arbitrator shall have authority to award equitable relief, damages, costs, and fees to the extent permitted by law, including, but not limited to, any remedy or relief that a governing court might order.

Starwood and I hereby agree that the Claims subject to arbitration shall include but not be limited to any and all Claims that arise out of or are related to the offer of employment, transfer or promotion extended by Starwood to me, any withdrawal or rescission of that offer, any aspect of my employment with Starwood or the terms and conditions of that employment, any claim for bonus, vacation pay or other compensation, any termination of that employment and any Claim of discrimination, retaliation, or harassment based upon age, race, religion, sex, creed, ethnicity, pregnancy, veteran status, citizenship status, national origin, disability, handicap, medical condition, sexual orientation or any other unlawful basis, or any other unlawful conduct, under

any applicable federal, state, local or other statutes, orders, laws, ordinances, regulations or the like, or case law, that relate to employment or employment practices, including without limitation, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, as amended, the Civil Rights Acts of 1866 and 1871, as amended, the Age Discrimination in Employment Act of 1967, as amended, the Americans with Disabilities Act of 1990, as amended, the Family Medical Leave Act of 1993, as amended, the Employee Retirement Income Security Act of 1990, as amended, the Worker Adjustment Retraining and Notification Act, as amended, the Fair Labor Standards Act, as amended, the Vietnam Era Veterans' Readjustment Assistance Act, as amended, the Equal Pay Act, as amended, the Rehabilitation Act, as amended, the Immigration Reform and Control Act, and the state and local analogues to the foregoing.

Starwood and I further agree that the Claims subject to arbitration shall exclude any Claims required by any applicable federal, state, local or other statute or benefit or pension plan to be submitted to an administrative forum (for example, a workers' compensation claim, a claim for unemployment insurance benefits, or an administrative charge of discrimination or retaliation filed with the Equal Employment Opportunity Commission or the state or local analogue to that agency but not litigation arising from such charges) and any Claims involving solely a monetary dispute within the jurisdiction of a small claims court. Starwood and I further agree that the Claims subject to arbitration also shall exclude any Claims to the extent they involve the alleged taking, use or disclosure of trade secrets and similar confidential or proprietary information, Claims involving a failure to pay a retention bonus or relocation expense, Claims involving a failure to repay any unearned portion of a retention bonus or relocation expense, Claims based upon any employee pension or benefit plan the terms of which contain an enforceable arbitration procedure, in which case the procedure of such plan shall apply, and Claims that cannot be compelled to mandatory arbitration under applicable federal law.

Starwood and I agree that any arbitration award rendered as the result of any arbitration under this Agreement shall be final and binding and may be entered and enforced as a court judgment in accordance with applicable law. Starwood and I further agree that this Agreement, any arbitration under this Agreement and any arbitration award rendered in such arbitration shall be governed by the Federal Arbitration Act.

By entering into this Agreement, Starwood and I each specifically acknowledge and understand that the right to the determination and/or trial of any Claims in court before a judge or a jury is a valuable right, and that by signing this Agreement Starwood and I hereby knowingly and voluntarily waive any and all rights we may have to assert any Claims in any court of competent jurisdiction and to a determination and/or trial before a judge or a jury.

I further understand and acknowledge that this Agreement is not intended to be and shall not be deemed to constitute a contract of employment for any specific duration, and that my employment shall be and remain at will, which means that Starwood and I shall be free to terminate that employment at any time for any or no reason with or without notice and with or without cause.

Each party's promise to resolve Claims by arbitration in accordance with the provisions of this Agreement is consideration for the other party's like promise. Additionally, I enter into this Agreement in consideration of Starwood's employment, transfer or promotion of me.

This Agreement shall survive my employer-employee relationship with Starwood and shall apply to any covered Claim whether arising or asserted during my employment or after the termination of my employment with the Company. This Agreement can be modified or revoked only by a writing signed by both Starwood's Executive Vice President, Human Resources and me and that expressly refers to this Agreement and specifically states an intent to modify or revoke it. This is the complete agreement of the parties on the subject of arbitration of disputes, except for any arbitration provision contained in a pension or benefit plan or an agreement covering change in control benefits and protections.

EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES CAREFULLY READING THIS AGREEMENT, UNDERSTANDING ITS TERMS, AND ENTERING INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

EACH PARTY FURTHER ACKNOWLEDGES HAVING THE OPPORTUNITY TO DISCUSS THE AGREEMENT WITH PERSONAL LEGAL COUNSEL AND HAS USED THAT OPPORTUNITY TO THE EXTENT DESIRED.

Dated: 5/17/05

Ross Klein

Dated: 5/9/05

David Norton
EVP, Human Resources
Starwood Hotels & Resorts Worldwide, Inc.

Attachment B

# NON-SOLICITATION, CONFIDENTIALITY AND INTELLECTUAL PROPERTY AGREEMENT

This Non-solicitation, Confidentiality and Intellectual Property Agreement ("Agreement") is entered into as of this 1ˢᵗ day of May 2005, (the "Effective Date"), by and between Starwood Hotels & Resorts Worldwide, Inc. (the "Company") and [Name] ("Employee").

WHEREAS, the Company devotes significant time, resources and effort to the training and advancement of its management, and its management team constitutes a significant asset and important competitive advantage; and

WHEREAS, the Employee has and will have access to important and sensitive confidential information; and

WHEREAS, the Company has determined that it is in the best interests of the Company and its shareholders to enter into an agreement with Employee whereby Employee will be prohibited from soliciting employees of the Company in accordance with the terms and conditions of this Agreement; and

WHEREAS, Employee may create inventions, trade secrets, know-how and documents or other works of authorship and may appear or perform in various promotional materials within the scope of Employee's employment.

WHEREAS, in consideration of the Company's offer of employment, Employee agrees to enter into this Agreement.

THEREFORE, the Company and Employee agree as follows:

1.    Non-solicitation. During the period in which Employee is employed by the Company, and for a period of one (1) year following the date of any termination of employment from the Company, Employee shall not, without the prior written consent of the Company, except in the course of carrying out Employee's duties hereunder, directly or indirectly solicit or attempt to solicit for employment with or on behalf of any corporation, partnership, joint venture or other business entity, any person who is, or at any time during the six-month period preceding the solicitation of such person was, a management-level employee of the Company (including, without limitation, for this purpose any director level employee of the Company and any General Manager of any hotel owned (in whole or in part) or managed by the Company).

2.    Confidentiality. Employee acknowledges that during the course of his/her employment with the Company, Employee will receive, and will have access to, "Confidential Information," as such term is defined below, of the Company and that such information is a special, valuable and unique asset belonging to the Company. Accordingly, Employee is willing to enter into the covenants contained in this Agreement in order to provide the Company with what Employee considers to be reasonable protection for the Company's interests. All notes, memoranda, papers, documents, correspondence or writings (which shall include information recorded or stored in writing, on magnetic tape or disc, or otherwise recorded or stored for reproduction, whether by mechanical or electronic means and whether or not such

reproduction will result in a permanent record being made) ("Documents") which from time to time may be in Employee's possession (whether prepared by Employee or not) relating, directly or indirectly, to the business of the Company shall be and remain the property of the Company and shall be delivered by Employee to the Company immediately upon request, and in any event promptly upon termination of Employee's employment, and Employee shall not make or keep any copies or extracts of the Documents. At any time during or after Employee's employment with the Company ends, without the prior written consent of the Company, except (i) in the course of carrying out Employee's duties hereunder or (ii) to the extent required by a court or governmental agency, or by applicable law or under compulsion of legal process, Employee shall not disclose to any third person any information concerning the business of the Company, including, without limitation, any trade secrets, customer lists and details of contracts with or requirements of customers, the identity of any owner of a managed hotel, information relating to any current, past or prospective management agreement or joint venture, information pertaining to business methods, sales plans, design plans and strategies, management organization, computer systems and software, operating policies or manuals, personnel records or information, information relating to current, past or contemplated employee benefits or compensation data or strategies, business, financial, development or marketing plans, or manpower strategies or plans, financial records or other financial, commercial, business or technical information relating to the Company (collectively, "Confidential Information"), unless such Confidential Information has been previously disclosed to the public by the Company or is in the public domain (other than by reason of Employee's breach of this Section 2). Employee will, prior to making any such disclosure pursuant to subsection (ii), promptly notify the Company of his/her receipt of such process or requirement, consult with the Company on the advisability of taking steps to resist or narrow such request, cooperate with the Company in any attempt that the Company may make to obtain a court order or other reliable assurance that confidential treatment will be accorded to all or designated portions of such information, and not disclose such Confidential Information unless the Company shall have had reasonable opportunity to obtain a court order prohibiting or limiting such disclosure.

       2.1    Employee agrees that, both during and after Employee's employment with the Company, if Employee is uncertain of whether or not information is confidential, Employee will treat that information as Confidential Information until Employee has received written verification from an authorized officer of the Company that the information is not Confidential Information.

       3.    Intellectual Property and Publicity Rights. Employee acknowledges and agrees that all right, title and interest in and to patents, patent applications, inventions, improvements, discoveries, developments, processes, business methods, technical information, know-how, trade secrets, computer programs, writings, designs, copyrights, maskworks, trademarks, service marks, trade names, trade dress and the like (collectively, "Intellectual Property"), including the right to invoke the benefit of the right of priority provided by any treaty to which the United States is a party, which Employee creates, conceives, develops or obtains, either solely or jointly with others, during Employee's employment with the Company (a) with the use of the Company's time, materials, facilities or other resources; or (b) resulting from or suggested by Employee's work for the Company; or (c) in any way relating to any subject matter relating to the existing or contemplated business, products and services of the Company or the Company's affiliates, subsidiaries and licensees shall be owned by the Company. Upon request, Employee shall execute all such assignments and other documents and take all such other action as the Company may reasonably request in order to vest in the Company, or its nominee, all of Employee's right, title, and interest in and to such Intellectual Property. Employee further acknowledges and agrees that the Company shall have the perpetual, worldwide right to use

Employee's name, performance, biography, voice, image, signature and likeness in promotional or any other materials developed by or for the Company during Employee's employment with the Company. Employee hereby irrevocably and unconditionally waives any and all rights that he/she has or may have in and to the Intellectual Property, including, without limitation, any "moral rights" that he/she has or may have as "author" of the Intellectual Property, and hereby expressly agrees not to make any claim or demand against the Company or any party authorized by the Company to exploit the Intellectual Property.

4.    Equitable Relief.

4.1    Employee acknowledges that the restrictions and obligations specified in Sections 1, 2 and 3 hereof are reasonable in view of the nature of the business in which the Company is engaged and Employee's knowledge of, and responsibilities with respect to, the Company's business, and that any breach of Sections 1, 2 or 3 hereof may cause the Company irreparable harm for which there is no adequate remedy at law, and as a result of this, the Company will be entitled to the issuance by a court of competent jurisdiction of an injunction, restraining order or other equitable relief in favor of the Company, without the necessity of posting a bond, restraining Employee from committing or continuing to commit any such violation. Any right to obtain an injunction, restraining order or other equitable relief hereunder will not be deemed to be a waiver of any right to assert any other remedy the Company may have at law or in equity, including, without limitation, the right to cancel payments to which Employee is otherwise entitled under Employee's employment agreement.

4.2    Any proceeding or action seeking equitable relief for violation of Sections 1, 2 and 3 hereof may be commenced in the federal courts in the Southern District of the State of New York, or in the absence of federal jurisdiction in state court in the State of New York. Employee hereby irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to take any and all future action necessary to submit to the jurisdiction of such courts. Employee irrevocably waives any objection that Employee now has or hereafter may have to the laying of venue of any suit, action or proceeding brought in any such court and further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. Final judgment against Employee in any such suit will be conclusive and may be enforced in other jurisdictions by suit on the judgment, a certified or true copy of which will be conclusive evidence of the fact and the amount of any liability therein described, or by appropriate proceedings under an applicable treaty or otherwise.

5.    Severability. In the event that any provision of this Agreement conflicts with the law under which this Agreement is to be construed, and/or if any such provision is held invalid by a court with jurisdiction over the parties to this Agreement and the subject matter of this agreement, (a) such provision will be deemed to be restated to reflect as nearly as possible the original intentions of the parties to the fullest extent permitted under applicable law, and (b) the remaining terms and provisions of this Agreement will remain in full force and effect.

6.    Governing Law. This Agreement shall be construed, governed and enforced according to the laws of the State of New York, without regard to the principles of conflicts of laws.

7.    Amendments and Waivers. No failure to act by the Company will waive any right contained in this Agreement. No provision of this Agreement may be amended or waived, except by a written agreement signed by both Employee and an authorized executive officer of the Company. Any waiver by the Company of strict performance of any provision of

this Agreement shall not be a waiver of or prejudice the Company's right to require strict performance of that same provision or any other provision of the Agreement in the future

      Employee acknowledges that he/she has had a reasonable opportunity to review and consider the terms described above and to consult with an attorney if he/she so chooses prior to signing this Agreement. Fully understanding the above terms, Employee is entering into this letter agreement knowingly and voluntarily.

      **IN WITNESS WHEREOF**, the Parties have executed this Agreement on the day and year first above written.

EMPLOYEE

_____
[Name]

_____
Print Name

_____
Date

STARWOOD HOTELS & RESORTS WORLDWIDE, INC.

_____
David Norton
EVP, Human Resources

_____
Date   5/9/05

# EXHIBIT 2



**STARWOOD**
HOTELS & RESORTS WORLDWIDE, INC.

October 9, 2006

Mr. Amar Lalvani
c/o Starwood Hotels & Resorts Worldwide, Inc.

Dear Amar,

We are delighted to confirm to you our offer of promotion at Starwood Hotels & Resorts Worldwide, Inc.

Attached are documents specifically outlining our offer of promotion to you. Please review them carefully and contact me should you have any questions concerning the terms of this assignment.

We are pleased that you are continuing to be an increasingly important part of our team. Please acknowledge your acceptance of this promotion by signing and returning the attached documents to me.

Sincerely,

Andrea Davitt

Andrea Davitt
Vice President, Corporate Human Resources
Starwood Hotels & Resorts Worldwide, Inc.

      
SHERATON    FOUR POINTS    ST REGIS    LUXURY COLLECTION    LE MERIDIEN    aloft    W    WESTIN

1111 Westchester Avenue, White Plains, New York 10604 Tel: 914-640-6100

October 9, 2006



Mr. Amar Lalvani
c/o Starwood Hotels & Resorts Worldwide, Inc.

Dear Amar,

We are pleased to offer your promotion with Starwood Hotels & Resorts Worldwide, Inc. ("Starwood" or the "Company") under the terms and conditions stated below:

**Start Date:**
Subject to the terms of this letter, this assignment with Starwood will begin on Monday, October 2, 2006.

**Responsibilities:**
Initially, your position will be Senior Vice President, W Development - Global in the Real Estate Group at the W office in New York City and you shall perform such duties and services as are assigned to you by the Company as requested. You shall devote your full time and attention to the affairs of the Company and to your job duties, and use your best efforts and abilities to promote Starwood's interests. You will be reporting to me, though the Company may make changes in your reporting structure, title, and job responsibilities at any time.

In performing your duties, you will be expected to comply at all times with all Starwood policies, procedures and directives as they currently exist or as they may be adopted or changed from time to time.

**Base Salary:**
Your base salary will be $250,000.00 annually, paid in semi-monthly intervals of $10,416.67, and subject to applicable withholdings for FICA, state and federal taxes. The Starwood salary program provides performance-based salary reviews for future salary progression.

**Cost of Living Allowance:**
You will also receive a cost of living allowance expressed in bi-weekly terms; this C.O.L.A. will be $2,083.33 (on an annualized basis equivalent to $50,000) for year one. In year two, this C.O.L.A. will be $1,041.67 (on an annualized basis equivalent to $25,000). Both years will be subject to applicable withholdings for FICA, state and federal taxes and Medicare. There will be no cost of living adjustment in year three. Any subsequent reassignment will result in having the COLA re-evaluated.

**Annual Incentive (Bonus):**
You will be eligible to participate in the Starwood Annual Incentive Plan (AIP). Your target incentive is 60% of base salary. Your actual incentive award will be based upon a variety of factors including company and division performance, and your achieving specified performance criteria to be established and approved with your manager. In the event that changes are made to any of the incentive plans, the changes will apply to you as they do other similarly situated employees of the Company.



Please note that the AIP provides that a portion of your annual bonus will be deferred and payable in Starwood stock or stock units. The current deferral portion of the bonus is 10% and is payable in Starwood stock having a value on the date of deferral equal to 133% of the amount deferred.

Payment of your 2006 bonus will be delivered according to the regular annual incentive plan payout schedule. An annual bonus shall not be deemed earned by you until the Company has determined your entitlement to such bonus and only if you are employed by the Company at the time such bonus is payable in accordance with the Annual Incentive Plan (AIP) and Company practices. The Company does not pay pro-rata bonuses upon departure.

**Long Term Incentive:**
You will be eligible to participate in Starwood's Long Term Incentive Compensation Plan ("LTIP"). This plan provides for the award of restricted shares at the Company's discretion to high performing executives. The actual number of shares granted, if any, will be based upon your performance.

**Benefits:**
Your original hire date will remain the same for benefit accrual purposes. If your promotion necessitates a change in medical plans, information will be provided to you after your new assignment begins.

**Relocation:**
Starwood has selected Cartus Mobility Services to administer our Relocation Program. Starwood will pay the reasonable, out-of-pocket costs of relocating your family and household furnishings from Brussels to the White Plains, NY area in accordance with the provisions of Starwood's Relocation Program - Plan I Homeowner. Details of Starwood's Relocation Program are enclosed. To be eligible for reimbursement of certain benefits, you are required to utilize the services of an agent in the Cartus Mobility Preferred Network on both departure and destination.

To initiate the moving process, please contact your Human Resources office. You will be assigned to a Client Services Consultant at Cartus Mobility who will provide you with relocation assistance and the names of the Preferred Network agents. In an effort to fully utilize our relocation benefit and avoid additional tax liability, we ask that you do not begin your relocation process before being contacted by your assigned Cartus Client Services Consultant. Please do not sign a Listing Agreement or begin searching for a new home until you have spoken with your Consultant. For questions regarding policy benefits or to register a real estate agent with Cartus, please call 1-800-423-8624.

In the event that you accept this offer of transfer and relocation expenses are paid to you or on your behalf, you agree that if you voluntarily terminate your employment within one year after your first day of employment, you will repay all such relocation expenses, reduced by 1/12 for each full calendar month actually worked. In addition, eligibility for reimbursement of any and all relocation expenses will cease on the last day of employment and any relocation expenses incurred after that date will not be reimbursed by Starwood and will be your responsibility

**Resolution of Disputes:**
From time to time, disagreements and misunderstandings may arise concerning your job responsibilities, performance, compensation, benefits or other matters affecting your employment with Starwood, or one of its affiliated companies. We hope that we will be able to resolve such matters through normal discussions with your immediate managers or Human Resources representatives.

In the event those efforts fail, you and Starwood agree, except as may be prohibited by law or as otherwise excluded by the terms of the attached Mutual Agreement to Arbitrate (Attachment A), to submit any and all disputes relating to or arising out of this offer letter, your employment with Starwood or the termination of that employment to final and binding arbitration pursuant to the employment rules then in effect of the American Arbitration Association, which shall be the sole and exclusive remedy for such disputes. Accordingly, you acknowledge and agree that this offer of employment and the benefits provided herein are contingent upon your execution of the Mutual Agreement to Arbitrate provided to you herewith and incorporated herein by reference. In the event that the Mutual Agreement to Arbitrate is determined by a court with appropriate jurisdiction to be unenforceable, you and Starwood Hotels & Resorts Worldwide, Inc. waive any right to a trial by jury on the claims that otherwise would have been subject to the Mutual Agreement to Arbitrate.

**Employment Term:**
While Starwood looks forward to a long and mutually beneficial relationship with you, you should understand that there is no fixed duration for your employment. In accepting this offer, you acknowledge and agree that your employment with the Company is at will, and may be terminated by Starwood at any time, with or without notice and for any or no reason. By signing below, you acknowledge that except for this letter, there is not and shall not be any written contract between you and the Company concerning this offer of employment or your prospective employment, and that nothing in this letter guarantees employment for any definite or specific term or duration or any particular level of benefits or compensation.

**Severance:**
In the event that Starwood terminates your employment for any reason other than "cause," Starwood will pay to you 12 months of your then current base salary, in a lump sum less all applicable withholdings (the "Severance Payment") and it will periodically reimburse you for your COBRA expenses minus your last level of normal contribution for up to 12 months commencing on the termination date. The Severance Payment will be in lieu of any compensation, damage or remedy to which you might otherwise be entitled and will be subject to and conditioned upon (a) your continuing compliance with the Non-Solicitation, Confidentiality and Intellectual Property Agreement refered to below and (b) your signing a written waiver and release of any and all claims against Starwood arising out of or relating to your employment with Starwood. You will not be eligible for any Severance Payment or COBRA reimbursement if you resign from your employment with the Company.

For purposes of this paragraph, "cause," shall mean (i) any material breach by you of any of the duties, responsibilities or obligations of your employment, or any of the policies or practices of Starwood; (ii) your failure or refusal to properly perform, the duties, responsibilities or obligations of your employment, or to properly perform or follow (as determined by Starwood in its reasonable discretion and judgment) any lawful order or direction by Starwood; (iii) any acts or omissions by you that constitute (as determined by Starwood in its reasonable discretion and judgment) fraud, dishonesty, breach of trust, gross negligence, civil or criminal illegality, or any other misconduct or behavior that could (as determined by Starwood in its reasonable discretion and judgment) subject to civil or criminal liability or otherwise adversely affect the business, interests or reputation of Starwood or any of its affiliates.

**Other Conditions and Obligations:**

You acknowledge that you are not subject to any currently effective employment contract, or any other contractual or other binding obligations pursuant to which your employment or employment activities with or on behalf of the Company may be subject to any restrictions. Restrictions include, without limitation, any agreements or other obligations or documents relating to non-competition, confidentiality, trade secrets, proprietary information or works for hire. By signing this letter, you represent to Starwood that there are no agreements or arrangements, whether written or oral, in effect that would prevent or conflict with your full performance of your employments duties and responsibilities to us.

As a further condition of this offer and your right to receive any of the benefits detailed herein, you agree to execute and be bound by a confidentiality and non-solicitation agreement provided to you by the Company (Attachment B).

**No Other Assurances:**

You acknowledge that in deciding to sign this offer, you have not relied on any promises, commitments, statements or representations, whether spoken or in writing, made to you by any representative of the Company, except for what is expressly stated herein. This offer replaces and cancels all previous agreements, commitments, and understandings whether spoken or written, if any, that the Company or any representative of the Company may have made in connection with your anticipated employment.

You also acknowledge that this offer is intended as written, and that no marginal notations or other revisions to either this offer, the Mutual Agreement to Arbitrate, or the Non-solicitation, Confidentiality and Intellectual Property Agreement are binding on the Company unless expressly consented to in writing by the Senior Vice President, Human Resources or Starwood's General Counsel. This offer shall be construed, governed by and enforced in accordance with the laws of the State of New York, without regard to its conflicts of laws principles.

By signing and returning this letter, you confirm that this letter accurately sets forth the current understanding between you and Starwood and that you accept and agree to the terms as stated above.

Very truly yours,

James Sabatier
Senior Vice President, Global Investments & W Development
Starwood Hotels & Resorts Worldwide, Inc.


ACCEPTED AND AGREED TO:

Amar Lalvani                                    Oct 12, 2006
                                                   Date

Attachment A

## MUTUAL AGREEMENT TO ARBITRATE

In order to gain the benefits of a speedy, impartial, and cost-effective dispute resolution procedure, and for good and valid consideration as covenanted below and in addition to any other consideration, and intending to be legally bound, Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") and I hereby agree that, except as otherwise provided herein, all disputes and claims for which a court otherwise would be authorized by law to grant relief, in any manner, that I may have, now or in the future, during or after my employment with Starwood, of any and every kind or nature whatsoever with or against Starwood, any of Starwood's affiliated or subsidiary companies, partners, joint venturers, owners of properties Starwood manages, and/or any of his, her, its or their directors, officers, employees or agents , or any disputes and claims that Starwood may have against me (collectively, "Claims"), shall be submitted to the American Arbitration Association ("AAA") to be resolved and determined through final and binding arbitration before a single arbitrator and to be conducted in accordance with the National Rules for the Resolution of Employment Disputes of the AAA. Starwood and I agree that the arbitrator will have the authority to grant motions dispositive of all or part of any Claim. Starwood shall be responsible for payment of all arbitrator compensation, AAA filing fees and AAA administrative fees, other than the initial AAA filing fee for which I will be responsible to pay up to a maximum of $125, or as otherwise required by law.

Any reference in this Agreement to Starwood also refers to all of Starwood's affiliated entities, benefit plans, the benefit plans' sponsors, fiduciaries and administrators, and all successors and assigns of any of them.

Starwood and I each have the right to representation by counsel with respect to arbitration of any dispute pursuant to this Agreement. Except as prohibited by law, at the request of either Starwood or me, the arbitration proceedings shall be conducted in confidence, and, in such a case, all documents, testimony, and records shall be received, heard, and maintained by the arbitrator in confidence, available for inspection only by me and Starwood, our respective attorneys, and experts, who shall agree, in advance and in writing, to receive all such information confidentially and to maintain the secrecy of such information until it shall become generally known. Both parties shall be allowed adequate discovery as part of the arbitration process, including reasonable access to essential documents and witnesses as determined by agreement or the arbitrator.

The arbitrator shall conduct a full hearing as to all issues and disputes not resolved by dispositive motion. At such hearing, the parties shall be entitled to present evidence and examine and cross-examine witnesses. The arbitrator shall issue a written decision revealing the essential findings and conclusions upon which any award is based. In addition, the arbitrator shall have authority to award equitable relief, damages, costs, and fees to the extent permitted by law, including, but not limited to, any remedy or relief that a governing court might order.

Starwood and I hereby agree that the Claims subject to arbitration shall include but not be limited to any and all Claims that arise out of or are related to the offer of employment, transfer or promotion extended by Starwood to me, any withdrawal or rescission of that offer, any aspect of my employment with Starwood or the terms and conditions of that employment, any claim for bonus, vacation pay or other compensation, any termination of that employment and any Claim of

discrimination, retaliation, or harassment based upon age, race, religion, sex, creed, ethnicity, pregnancy, veteran status, citizenship status, national origin, disability, handicap, medical condition, sexual orientation or any other unlawful basis, or any other unlawful conduct, under any applicable federal, state, local or other statutes, orders, laws, ordinances, regulations or the like, or case law, that relate to employment or employment practices, including without limitation; Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, as amended, the Civil Rights Acts of 1866 and 1871, as amended, the Age Discrimination in Employment Act of 1967, as amended, the Americans with Disabilities Act of 1990, as amended, the Family Medical Leave Act of 1993, as amended, the Employee Retirement Income Security Act of 1990, as amended, the Worker Adjustment Retraining and Notification Act, as amended, the Fair Labor Standards Act, as amended, the Vietnam Era Veterans' Readjustment Assistance Act, as amended, the Equal Pay Act, as amended, the Rehabilitation Act, as amended, the Immigration Reform and Control Act, and the state and local analogues to the foregoing.

Starwood and I further agree that the Claims subject to arbitration shall exclude any Claims required by any applicable federal, state, local or other statute or benefit or pension plan to be submitted to an administrative forum (for example, a workers' compensation claim, a claim for unemployment insurance benefits, or an administrative charge of discrimination or retaliation filed with the Equal Employment Opportunity Commission or the state or local analogue to that agency but not litigation arising from such charges), any claims involving any loans or advances paid to me that are subject to any mortgage, promissory note or other similar agreement that I have signed, and any Claims involving solely a monetary dispute within the jurisdiction of a small claims court. Starwood and I further agree that the Claims subject to arbitration also shall exclude any Claims to the extent they involve the alleged taking, use or disclosure of trade secrets and similar confidential or proprietary information, Claims involving a failure to pay a retention bonus or relocation expense, Claims involving a failure to repay any unearned portion of a retention bonus or relocation expense, Claims based upon any employee pension or benefit plan the terms of which contain an enforceable arbitration procedure, in which case the procedure of such plan shall apply, and Claims that cannot be compelled to mandatory arbitration under applicable federal law.

Starwood and I agree that any arbitration award rendered as the result of any arbitration under this Agreement shall be final and binding and may be entered and enforced as a court judgment in accordance with applicable law. Starwood and I further agree that this Agreement, any arbitration under this Agreement and any arbitration award rendered in such arbitration shall be governed by the Federal Arbitration Act.

By entering into this Agreement, Starwood and I each specifically acknowledge and understand that the right to the determination and/or trial of any Claims in court before a judge or a jury is a valuable right, and that by signing this Agreement Starwood and I hereby knowingly and voluntarily waive any and all rights we may have to assert any Claims in any court of competent jurisdiction and to a determination and/or trial before a judge or a jury.

I further understand and acknowledge that this Agreement is not intended to be and shall not be deemed to constitute a contract of employment for any specific duration, and that my employment shall be and remain at will, which means that Starwood and I shall be free to terminate that employment at any time for any or no reason with or without notice and with or without cause.

Each party's promise to resolve Claims by arbitration in accordance with the provisions of this Agreement is consideration for the other party's like promise. Additionally, I enter into this Agreement in consideration of Starwood's employment, transfer or promotion of me.

This Agreement shall survive my employer-employee relationship with Starwood and shall apply to any covered Claim whether arising or asserted during my employment or after the termination of my employment with the Company. This Agreement can be modified or revoked only by a writing signed by both Starwood's Senior Vice President, Human Resources and me and that expressly refers to this Agreement and specifically states an intent to modify or revoke it. This is the complete agreement of the parties on the subject of arbitration of disputes, except for any arbitration provision contained in a pension or benefit plan or an agreement covering change in control benefits and protections.

EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES CAREFULLY READING THIS AGREEMENT, UNDERSTANDING ITS TERMS, AND ENTERING INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

EACH PARTY FURTHER ACKNOWLEDGES HAVING THE OPPORTUNITY TO DISCUSS THE AGREEMENT WITH PERSONAL LEGAL COUNSEL AND HAS USED THAT OPPORTUNITY TO THE EXTENT DESIRED.

Dated: Oct 12, 2006

Amar Lalvani

Dated: _____

James Sabatier
Senior Vice President, Global Investments & W Development
Starwood Hotels & Resorts Worldwide, Inc.

Attachment B

# NON-SOLICITATION, CONFIDENTIALITY AND INTELLECTUAL PROPERTY AGREEMENT

This Non-solicitation, Confidentiality and Intellectual Property Agreement ("Agreement") is entered into as of this 9th day of October, 2006, (the "Effective Date"), by and between Starwood Hotels & Resorts Worldwide, Inc. (the "Company") and Amar Lalvani (the "Employee").

WHEREAS, the Company devotes significant time, resources and effort to the training and advancement of its management, and its management team constitutes a significant asset and important competitive advantage; and

WHEREAS, the Employee has and will have access to important and sensitive confidential information; and

WHEREAS, the Company has determined that it is in the best interests of the Company and its shareholders to enter into an agreement with Employee whereby Employee will be prohibited from soliciting employees of the Company in accordance with the terms and conditions of this Agreement; and

WHEREAS, Employee may create inventions, trade secrets, know-how and documents or other works of authorship and may appear or perform in various promotional materials within the scope of Employee's employment.

WHEREAS, in consideration of the Company's offer of employment, Employee agrees to enter into this Agreement.

THEREFORE, the Company and Employee agree as follows:

1.    Non-solicitation. During the period in which Employee is employed by the Company, and for a period of one (1) year following the date of any termination of employment from the Company, Employee shall not, without the prior written consent of the Company, except in the course of carrying out Employee's duties hereunder, directly or indirectly solicit or attempt to solicit for employment with or on behalf of any corporation, partnership, joint venture or other business entity, any person who is, or at any time during the six-month period preceding the solicitation of such person was, a management-level employee of the Company (including, without limitation, for this purpose any director level employee of the Company and any General Manager of any hotel owned (in whole or in part) or managed by the Company).

2.    Confidentiality. Employee acknowledges that during the course of his/her employment with the Company, Employee will receive, and will have access to, "Confidential Information," as such term is defined below, of the Company and that such information is a special, valuable and unique asset belonging to the Company. Accordingly, Employee is willing to enter into the covenants contained in this Agreement in order to provide the Company with what Employee considers to be reasonable protection for the Company's interests. All notes, memoranda, papers, documents, correspondence or writings (which shall include information recorded or stored in writing, on magnetic tape or disc, or otherwise recorded

or stored for reproduction, whether by mechanical or electronic means and whether or not such reproduction will result in a permanent record being made) ("Documents") which from time to time may be in Employee's possession (whether prepared by Employee or not) relating, directly or indirectly, to the business of the Company shall be and remain the property of the Company and shall be delivered by Employee to the Company immediately upon request, and in any event promptly upon termination of Employee's employment, and Employee shall not make or keep any copies or extracts of the Documents. At any time during or after Employee's employment with the Company ends, without the prior written consent of the Company, except (i) in the course of carrying out Employee's duties hereunder or (ii) to the extent required by a court or governmental agency, or by applicable law or under compulsion of legal process, Employee shall not disclose to any third person any information concerning the business of the Company, including, without limitation, any trade secrets, customer lists and details of contracts with or requirements of customers, the identity of any owner of a managed hotel, information relating to any current, past or prospective management agreement or joint venture, information pertaining to business methods, sales plans, design plans and strategies, management organization, computer systems and software, operating policies or manuals, personnel records or information, information relating to current, past or contemplated employee benefits or compensation data or strategies, business, financial, development or marketing plans, or manpower strategies or plans, financial records or other financial, commercial, business or technical information relating to the Company (collectively, "Confidential Information"), unless such Confidential Information has been previously disclosed to the public by the Company or is in the public domain (other than by reason of Employee's breach of this Section 2). Employee will, prior to making any such disclosure pursuant to subsection (ii), promptly notify the Company of his/her receipt of such process or requirement, consult with the Company on the advisability of taking steps to resist or narrow such request, cooperate with the Company in any attempt that the Company may make to obtain a court order or other reliable assurance that confidential treatment will be accorded to all or designated portions of such information, and not disclose such Confidential Information unless the Company shall have had reasonable opportunity to obtain a court order prohibiting or limiting such disclosure.

2.1   Employee agrees that, both during and after Employee's employment with the Company, if Employee is uncertain of whether or not information is confidential, Employee will treat that information as Confidential Information until Employee has received written verification from an authorized officer of the Company that the information is not Confidential Information.

3.   Intellectual Property and Publicity Rights. Employee acknowledges and agrees that all right, title and interest in and to patents, patent applications, inventions, improvements, discoveries, developments, processes, business methods, technical information, know-how, trade secrets, computer programs, writings, designs, copyrights, maskworks, trademarks, service marks, trade names, trade dress and the like (collectively, "Intellectual Property"), including the right to invoke the benefit of the right of priority provided by any treaty to which the United States is a party, which Employee creates, conceives, develops or obtains, either solely or jointly with others, during Employee's employment with the Company (a) with the use of the Company's time, materials, facilities or other resources; or (b) resulting from or suggested by Employee's work for the Company; or (c) in any way relating to any subject matter relating to the existing or contemplated business, products and services of the Company or the Company's affiliates, subsidiaries and licensees shall be owned by the Company. Upon request, Employee shall execute all such assignments and other documents and take all such other action as the Company may reasonably request in order to vest in the Company, or its nominee, all of Employee's right, title, and interest in and to such Intellectual Property. Employee further

acknowledges and agrees that the Company shall have the perpetual, worldwide right to use Employee's name, performance, biography, voice, image, signature and likeness in promotional or any other materials developed by or for the Company during Employee's employment with the Company. Employee hereby irrevocably and unconditionally waives any and all rights that he/she has or may have in and to the Intellectual Property, including, without limitation, any "moral rights" that he/she has or may have as "author" of the Intellectual Property, and hereby expressly agrees not to make any claim or demand against the Company or any party authorized by the Company to exploit the Intellectual Property.

4.    Equitable Relief.

4.1    Employee acknowledges that the restrictions and obligations specified in Sections 1, 2 and 3 hereof are reasonable in view of the nature of the business in which the Company is engaged and Employee's knowledge of, and responsibilities with respect to, the Company's business, and that any breach of Sections 1, 2 or 3 hereof may cause the Company irreparable harm for which there is no adequate remedy at law, and as a result of this, the Company will be entitled to the issuance by a court of competent jurisdiction of an injunction, restraining order or other equitable relief in favor of the Company, without the necessity of posting a bond, restraining Employee from committing or continuing to commit any such violation. Any right to obtain an injunction, restraining order or other equitable relief hereunder will not be deemed to be a waiver of any right to assert any other remedy the Company may have at law or in equity, including, without limitation, the right to cancel payments to which Employee is otherwise entitled under Employee's employment agreement.

4.2    Any proceeding or action seeking equitable relief for violation of Sections 1, 2 and 3 hereof may be commenced in the federal courts in the Southern District of the State of New York, or in the absence of federal jurisdiction in state court in the State of New York. Employee hereby irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to take any and all future action necessary to submit to the jurisdiction of such courts. Employee irrevocably waives any objection that Employee now has or hereafter may have to the laying of venue of any suit, action or proceeding brought in any such court and further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. Final judgment against Employee in any such suit will be conclusive and may be enforced in other jurisdictions by suit on the judgment, a certified or true copy of which will be conclusive evidence of the fact and the amount of any liability therein described, or by appropriate proceedings under an applicable treaty or otherwise.

5.    Severability. In the event that any provision of this Agreement conflicts with the law under which this Agreement is to be construed, and/or if any such provision is held invalid by a court with jurisdiction over the parties to this Agreement and the subject matter of this agreement, (a) such provision will be deemed to be restated to reflect as nearly as possible the original intentions of the parties to the fullest extent permitted under applicable law, and (b) the remaining terms and provisions of this Agreement will remain in full force and effect.

6.    Governing Law. This Agreement shall be construed, governed and enforced according to the laws of the State of New York, without regard to the principles of conflicts of laws.

7.    Amendments and Waivers. No failure to act by the Company will waive any right contained in this Agreement. No provision of this Agreement may be amended or waived, except by a written agreement signed by both Employee and an authorized executive

officer of the Company.  Any waiver by the Company of strict performance of any provision of this Agreement shall not be a waiver of or prejudice the Company's right to require strict performance of that same provision or any other provision of the Agreement in the future.

Employee acknowledges that he/she has had a reasonable opportunity to review and consider the terms described above and to consult with an attorney if he/she so chooses prior to signing this Agreement.  Fully understanding the above terms, Employee is entering into this letter agreement knowingly and voluntarily.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the day and year first above written.

Dated: Octover 12, 2006 _____
                                    Amy Lalvani

Dated: _____      _____
                                    James Sabatier
                                    Senior Vice President, Global Investments & W Development
                                    Starwood Hotels & Resorts Worldwide, Inc.

# EXHIBIT 3

# SEPARATION AGREEMENT AND MUTUAL GENERAL RELEASE OF CLAIMS

Ross Klein (hereinafter referred to as "Employee") and Starwood Hotels & Resorts Worldwide, Inc. (hereinafter referred to as the "Company") agree as follows:

<u>ONE</u>:  <u>Termination of Employment</u>.

Employee acknowledges that his employment with the Company will end upon his resignation, which he hereby tenders and which will be effective May 30, 2008 (hereinafter referred to as the "Termination Date"). After the Termination Date, Employee will perform no further duties, functions or services for the Company or any of its affiliates, nor will he be entitled to any further compensation and/or benefits except as described herein.

<u>TWO</u>:  <u>Benefits</u>.

In consideration for Employee's agreements and covenants including the release of claims set forth in this Agreement and as full and complete and final satisfaction of any and all claims which Employee had, has or may have against the Company through the date of execution of this Agreement, the Company agrees that after its receipt of this fully executed Agreement, provided that Employee does not revoke pursuant to Paragraph EIGHT herein, it will (i) pay Employee an amount equal to 12 months of his base salary in a lump sum of $496,116.00, less applicable deductions within 10 business days of the date when this Agreement becomes binding; (ii) make COBRA premium payments on Employee's behalf, minus Employee's normal contributions, for a period of 12 months commencing on the Termination Date should Employee choose to continue coverage under the Company's applicable plans; (iii) pay Employee $59,475.00, less applicable deductions, within 10 business days of the date when this Agreement becomes binding, which amount represents one half of the initial HOT Feature deduction of $118,950.00 made on March 1, 2007 under the Company's Annual Incentive Plan; and (iv) pay Employee $106,635.00, less applicable deductions, within 10 business days of the date when this Agreement becomes binding, which amount represents the full amount of the HOT Feature deduction made on March 1, 2008 under the Company's Annual Incentive Plan. Employee also shall be entitled to receive a payout for accrued and unused vacation time as of the Termination Date in accordance with the Company's policies.

<u>THREE</u>:  <u>Mutual General Release</u>.

In exchange for the agreement to provide the severance pay and other benefits and arrangements provided for in this Agreement, Employee, on behalf of himself and his heirs, dependents, beneficiaries, executors, administrators, representatives, successors, and assigns, hereby irrevocably, fully and unconditionally releases and discharges the Company and its affiliates and subsidiaries and its and their officers, directors, employees, agents, shareholders, employee benefit programs, administrators, insurers, attorneys and successors and assigns (collectively "Releasees"), from any and all claims, actions, suits, damages, complaints and

1

grievances the Employee, his attorneys, heirs, dependents, beneficiaries, executors, administrators, successors, and assigns, ever had, now have or hereafter can, shall or may have of any nature whatsoever, whether in law or in equity, whether known or unknown, including any and all claims related to the Employee's employment with the Company or the termination of that employment.  This includes a release of any rights or claims the Employee may have under the **Age Discrimination in Employment Act**, which prohibits discrimination in employment based on age; Title VII of
the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991, which prohibit discrimination in employment based on race, color, national origin, ancestry, religion or sex; the Pregnancy Discrimination Act, which prohibits discrimination based on pregnancy; the Equal Pay Act, which prohibits paying men and women unequal pay for equal work; the Civil Rights Acts of 1866 and 1871, as amended, which protect against certain discrimination and violations of individuals' civil rights; the Americans with Disabilities Act, which prohibits discrimination on the basis of physical or mental disability; the Employee Retirement Income Security Act (ERISA), which regulates certain conduct and practices relating to employee benefit and health plans; the Family and Medical Leave Act, which provides time off to employees for certain family and medical events and prohibits discrimination relating to such leaves of absence; the Immigration Reform and Control Act, which prohibits discrimination based upon an individual's national origin citizenship status and/or work authorization documents; the Older Worker Benefit Protection Act (OWBPA) the New York State Executive Law, the New York City Administrative Code, and the New York State Constitution; or any other federal, state or local laws or regulations prohibiting employment discrimination or regulating employment or termination of employment.  This also includes a release by the Employee of any claims for wrongful discharge and any other common law claims.  This release applies to all claims through the date of execution of this Agreement and covers both claims that the Employee knows about and those he may not know about but excludes (i) any claim by Employee to enforce the terms of this Agreement; and (ii) any claim to enforce Employee's indemnification rights; and (iii) any claims related to actions or omissions occurring after the execution of this Agreement.

In consideration of Employee's agreements hereunder, the Company, on its own behalf and on behalf of its current and former affiliates or related companies, subsidiaries, branches and divisions, and the successors and assigns of all of the foregoing (collectively, the "Company Releasor") hereby releases Employee and Employee's heirs, executors, administrators, successors and assigns from or in connection with any and all actions, claims or demands, known or unknown and of any nature whatsoever and which Company Releasor ever had, now has or hereafter can, shall or may have as of the date hereof relating to Employee's employment with the Company, except that this Release shall not apply to (i) any obligation of Employee pursuant to this Agreement and the Non-Solicitation, Confidentiality and Intellectual Property Agreement dated May 1, 2005 (the "Confidentiality Agreement"); (ii) any act by Employee during his employment that would constitute fraud or embezzlement; or (iii) any actions, claims or demands related to actions or omissions occurring after the date hereof.

FOUR:  Acknowledgment of Full Payment.

2

Employee acknowledges that the payments and arrangements specified in Paragraph TWO above represent sufficient consideration for Employee's release of claims and the other covenants contained in this Agreement. Employee expressly acknowledges that the severance pay provided for in this Agreement exceeds, supersedes and extinguishes any amount, if any, to which Employee may be entitled under any employment agreement, verbal or written, as well as any employment or personnel policies, procedures or handbooks including but not limited to severance plans, policies or precedent utilized by the Company or any other legal obligation which the Company may have to Employee. Employee further acknowledges that in the absence of this Agreement, Employee would not be entitled to, among other things, all of the payments and benefits specified in paragraph TWO above. Other than Employee's accrued but unused vacation pay for which Employee will be compensated and Employee's 401k plan benefits, Employee also acknowledges that the Company has paid all sums owed to him as a result of his employment with the Company and/or the termination of that employment and that, other than as provided in this Agreement, Employee is not entitled to, among other things, any further pay, benefits or severance.

Employee and the Company acknowledge and agree that to the extent that Employee currently holds stock options and restricted stock, that this information is accurately set forth on Exhibit A attached hereto, Employee has no other rights that relate to the securities of the Company or any of its affiliates or subsidiaries and that such equity will expire in accordance with the applicable long-term incentive plan and/or stock option agreements and/or restricted stock agreements. Other than the fact that Employee's employment was terminated on the Termination Date and other than as detailed expressly in Paragraph TWO herein, nothing in this Agreement shall be construed to alter, amend or modify the terms and conditions governing any restricted stock, stock options or similar rights, and any rights pertaining thereto, granted to Employee prior to the Termination Date.

FIVE:   Termination of All Existing Agreements.

Except as otherwise expressly provided herein and other than agreements relating to confidentiality, non-solicitation and non-disclosure, including, without limitation, the Confidentiality Agreement, all rights and obligations of the Company and Employee under any employment agreement Employee may have had with the Company, and any other agreement, arrangement, obligation or understanding between the Company and the Employee are hereby cancelled and terminated as of the Termination Date without liability of any party thereunder.

SIX:   Non-Admission of Liability.

The parties have entered into this Agreement to effect a mutually acceptable termination of Employee's employment with the Company. Neither the Company nor the Employee believes nor admits that either or both of them have done anything wrong.

SEVEN: Period for Review and Consideration of Agreement.

3

Employee understands that he has been given a period of 21 calendar days to review and consider this Agreement. Employee further understands that he may take as much or as little of this 21-day period of time to consider this Agreement as he wishes, before signing this Agreement.

EIGHT: Revocation Period and Payment of Benefits.

This Agreement will not become effective or binding on the parties until seven (7) days after it is signed, during which time Employee may revoke this Agreement if he desires. Any revocation must be in writing and directed to Chief Administrative Officer and General Counsel, 1111 Westchester Avenue, White Plains, NY 10604.

NINE: Encouragement to Consult with Attorney.

Employee is encouraged to consult with an attorney before signing this Agreement. Employee understands that whether to do so is his decision.

TEN: Binding Agreement.

This Agreement shall be binding upon and inure to the benefit of the parties, as well as their heirs, administrators, representatives, agents, executors, successors and assigns.

ELEVEN: Arbitration.

Any controversy, dispute or claim arising out of or related to this Agreement or its enforceability shall be finally settled by final and binding arbitration conducted by a single arbitrator selected by the parties in accordance with the Employment Rules of the American Arbitration Association.

TWELVE: Confidentiality.

Employee represents and agrees that he will keep the terms and dollar amount contained in this Agreement confidential, and that he will not disclose any information concerning this Agreement to any third person, including, but not limited to any past or present employee of the Company, except as may be required by law. Nothing herein shall preclude Employee from disclosing the terms of this Agreement to his spouse or to his accountant, legal counsel, insurer or tax advisors; provided that his spouse and such accountant, legal counsel, insurer or tax advisors are advised of and agree to be bound by the provisions of this Paragraph. Employee acknowledges that he will be responsible for any violation of the terms of this Paragraph TWELVE by any of those persons.

THIRTEEN: Confidential Information.

As a senior executive of the Company, Employee acknowledges that he has had access to Confidential Information (as hereinafter defined) of the Company through the Termination Date. Without limiting Employee's continuing legal obligations pursuant to the

4

Confidentiality Agreement, in recognition of Employee's legal obligations and the consideration set forth in this Agreement, Employee agrees not to disclose, communicate or divulge to, or use for the direct or indirect benefit of, any person (including Employee), firm, association or other entity (other than the Company or its affiliates) any Confidential Information.

"Confidential Information" includes, but is not limited to, customer lists, customer financial information, vendor lists, joint venture lists, actual, contemplated and potential development projects, opportunities and partners, development strategies, brand marketing and other brand strategies, information relating to any current, past or prospective management agreement or joint venture, design plans and strategies, personnel information, labor and personnel strategies, databases, computer programs and software, frameworks, designs, models, blueprints, marketing programs and plans, sales, financial, design, training and technical information and plans, sales data and contacts, business methods, business policies, procedures, techniques, research or development projects or results, trade secrets (which includes the Company's customer and prospective customer lists), pricing policies, financial records, or other financial, commercial, business or technical information relating to the Company or any of its subsidiaries. Employee's obligation with respect to Confidential Information shall terminate with respect to any particular portion of the Confidential Information when Employee can document that such information was in the public domain at the time of its communication or it entered the public domain through no fault of Employee.

Employee hereby represents and agrees that on or before the Termination Date: (i) Employee has returned or will return to the Company, and has not retained or will not retain originals or any copies of all documents, records or materials of any kind, whether written or electronically created or stored, which contain, relate to or refer to any Confidential Information ("Confidential Materials"); and (ii) Employee has not disclosed and will not disclose any Confidential Information or Confidential Materials to any person or entity without the express written authorization of an authorized officer of the Company.

In the event that Employee receives a subpoena or any other written or oral request for disclosure or release of any Confidential Information, Confidential Materials or any other information concerning the Company or its subsidiaries, or its or their current or former employees, officers, directors, shareholders or agents, Employee shall, within two (2) business days of the service or receipt of such subpoena or other request notify the Company in writing directed to Chief Administrative Officer and General Counsel, Starwood Hotels & Resorts Worldwide, Inc., 1111 Westchester Avenue, White Plains, New York 10604 and provide the Company with a copy of any subpoena or other written request, or disclose the nature of the request for information, if oral.

FOURTEEN: Noninterference.

During the period commencing on the Termination Date and ending on the first anniversary of the Termination Date, Employee solely with respect to matters of which he is aware on or before the Termination Date, shall not take or omit to take any action or actions which are intended to or actually cause or encourage any person or prospective entity with which the

5

Company intends to enter into a business relationship or transaction (or any agent or affiliate thereof) to fail to enter into the contemplated business relationship or complete the contemplated transaction. Without limiting the generality of the foregoing, Employee agrees not to pursue on his behalf or on behalf of any other person or entity or otherwise interfere with the Company's pursuit of any pending or contemplated deal, merger or acquisition of which he was aware on or before the Termination Date.

FIFTEEN: Non-Disparagement.

Employee agrees not to engage in any act or say, publish or disseminate anything (either directly or by or through another person) that is intended, or may reasonably be expected, to harm the reputation, business or operations of the Company, its customers, its employees, officers, directors or shareholders prior to or after the Termination Date. The Company agrees that it will not make any statements that are intended, or would reasonably be expected, to disparage or defame Employee.

SIXTEEN: Future Cooperation.

After the Termination Date, Employee will comply with reasonable requests from any Releasee for assistance and/or information in connection with any matters and/or issues relating to or encompassed within the duties and responsibilities of Employee's employment, including without limitation, consulting with any of the employees and/or attorneys of any Releasee with respect to, and/or appearing as a witness in, any dispute, controversy, action or proceeding of any kind. Employee agrees to appear as a witness in any proceeding of any kind and to make himself available in advance for reasonable preparation upon the request of the Company with reasonable advance notification without the need for the Company to issue a subpoena. In connection with any of Employee's cooperation efforts mandated by this Paragraph SIXTEEN, Employee shall be entitled to receive an agreed hourly or per diem amount (or reimbursement of lost wages as the case may be) and reimbursement of reasonable travel and other out of pocket expenses provided that those expenses are submitted pursuant to and are in conformance with the then applicable Company policy relating to expense reimbursement.

SEVENTEEN: Non-Solicitation

During the 12-month period commencing on the Termination Date, Employee agrees that he will not, without the prior written consent of the Company, directly or indirectly, solicit or attempt to solicit for employment with or on behalf of any corporation, partnership, joint venture or other business entity, any person who is, or at any time during the six-month period preceding the solicitation of such person was, a management-level employee of the Company (including, without limitation, for this purpose any employee at director level or above and any General Manager of any hotel owned (in whole or in part) or managed by the Company).

EIGHTEEN:  Injunctive Relief

6

Employee acknowledges and agrees that Paragraphs THIRTEEN, FOURTEEN, FIFTEEN and SEVENTEEN hereof relate to special, unique and extraordinary matters and that a violation of any of the terms of such Paragraphs will cause the Company irreparable injury for which adequate remedies are not available at law. Therefore, Employee agrees that the Company shall be entitled to an injunction, restraining order or such other equitable relief (without the requirement to post bond) in a court of law restraining Employee from committing any violation of the covenants and obligations contained in Paragraphs THIRTEEN, FOURTEEN, FIFTEEN and SEVENTEEN. These remedies are cumulative and are in addition to any other rights and remedies the Company may have at law or in equity.

NINETEEN:  Return of Company Property.

Employee agrees that within 1 week after the Termination Date, he will return to the Company all Company property in his possession or over which he has retained control such as printers, scanners and accessories, disks, laptops, computers, PDA's, such as Blackberry devices, keys, cell phones, credit cards, access cards, Company records, documents and files and all copies and recordings thereof. To the extent Employee subsequently discovers Company property in his possession or within his control, he shall immediately return such property and all copies, recordings or duplicates thereof to the Company.

TWENTY:  Severability.

If any portion of this Agreement is declared unlawful or unenforceable, the remaining parts will remain enforceable.

TWENTY-ONE:  Public Announcement

Employee is required to request and receive approval of the Company of the content of any voluntary statements, whether oral or written, to be made by Employee to any third party or parties regarding Employee's separation from employment with the Company, including, without limitation, any press release or other statements to the press, except that this Paragraph TWENTY-ONE shall not apply to any statements required to be made by reason of law, regulation, or any judicial or other similar proceeding or order. Employee hereby covenants and agrees not to make any public statements (either directly or by or through another person) to any third party, including, without limitation, to any representative of any news organization, which are inconsistent in any material respect with the aforementioned agreed upon statements to the public.

7

**TWENTY-TWO**: Entire Agreement.

This Agreement, including Exhibits A hereto, is the entire agreement between Employee and the Company regarding the subjects addressed in this document and this Agreement supersedes any other agreements between the parties, other than agreements relating to confidentiality, non-disclosure and non-solicitation, including without limitation, the Confidentiality Agreement. The Company has made no promises to Employee other than those in this Agreement.

EMPLOYEE ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT, UNDERSTANDS IT, HAS TAKEN SUFFICIENT TIME TO CONSIDER IT AND IS VOLUNTARILY ENTERING INTO IT.

EMPLOYEE UNDERSTANDS THAT THIS AGREEMENT CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AND A RESTRICTION ON RELEASE OF CONFIDENTIAL INFORMATION.

ROSS KLEIN

Signed: _____

Dated: _____

STARWOOD HOTELS & RESORTS WORLDWIDE, INC.

By: _____

Name: _____

Title: _____

Dated: _____

8

EXHIBIT 4

# HOGAN & HARTSON

Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
+1.212.918.3000 Tel
+1.212.918.3100 Fax

www.hhlaw.com

November 17, 2008

Michael Starr
Partner
(212) 918-3638
mstarr@hhlaw.com

## VIA FEDERAL EXPRESS

**PERSONAL & CONFIDENTIAL**
Mr. Ross A. Klein
c/o Hilton Hotels Corporation
9336 Civic Center Drive
Beverley Hills, CA 90210

Re:  *In the Matter of the Arbitration Between Starwood*
     *Hotels & Resorts Worldwide, Inc. and Ross A. Klein*

Dear Mr. Klein:

This firm represents Starwood Hotels & Resorts Worldwide, Inc. ("*Starwood*") in the arbitration that Starwood has commenced against you pursuant to the Separation Agreement and Mutual General Release of Claims, that you signed on May 29, 2008.

This letter is to advise you that in connection with this arbitration we will, at the appropriate time, seek documents in your possession, custody or control that are relevant to the issues in this action.  Accordingly, you should take care not to delete or destroy any hard copy or electronic documents and/or e-mails that you have in your files or on your computer(s), including the non-intentional deletion of electronically-stored information by automatic processes.  Such documents include but are not necessarily limited to the following:

- Documents or e-mails concerning the hiring and recruitment of Jeffrey Darnell, Amar Dalvani, Erin Shaffer, or Stephanie Heer by Hilton Hotel Corporation ("*Hilton*");

- E-mails from or to you, including indirectly to you as a recipient who was "cc'd" or "bcc'd," concerning Hilton's hiring and recruitment of Jeffrey Darnell, Amar Dalvani, Erin Shaffer, and Stephanie Heer;

- Documents or e-mails concerning any attempted or actual recruitment or solicitations, by Hilton, including by any persons who were at the time of such solicitation or recruitment, employed by Hilton, of any other person who at the time of such activity, was a

Mr. Ross A. Klein
c/o Hilton Hotels Corporation
November 17, 2008
Page 2

management-level employee of Starwood, whether or not that person was actually hired
by Hilton; and

- Documents or e-mails concerning any other person who at the time of his or her hiring, or
  immediately preceding his or her hiring by Hilton, was a management-level employee of
  Starwood.

Please understand that the destruction or altercation in any way, of the documents that may be
needed by Starwood in a legal proceeding, is a serious matter and may be wrongful on your part.
We expect your full compliance with this request.

Very truly yours,

Michael Starr

MS:scc

cc:  Jamie E. Balanoff, Esq.

# EXHIBIT 5

# HOGAN & HARTSON

Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
+1.212.918.3000 Tel
+1.212.918.3100 Fax

www.hhlaw.com

November 17, 2008

Michael Starr
Partner
(212) 918-3538
mstarr@hhlaw.com

*VIA FEDERAL EXPRESS*

Richard M. Lucas, Esq.
EVP & General Counsel
Hilton Hotels Corporation
9336 Civic Center Drive
Beverly Hills, CA  90210

Re:  *In the Matter of the Arbitration Between Starwood
     Hotels & Resorts Worldwide, Inc. and Ross A. Klein*

Dear Mr. Lucas:

This firm represents Starwood Hotels & Resorts Worldwide, Inc. ("*Starwood*") in a certain arbitration that Starwood has commenced against your employee, Ross Klein, pursuant to the Separation Agreement and Mutual General Release of Claims, that he signed with Starwood on May 29, 2008.

While we cannot at this time disclose to you the precise nature of the claims asserted, we have reason to believe that Hilton Hotel Corporation ("*Hilton*") is likely to have documents that are relevant to the issues raised in that proceeding.  As such, at the appropriate time we intend to seek a subpoena for the production of relevant documents in Hilton's possession, custody or control.  In the interim, we urge that Hilton take care not to delete or destroy any hard copy or electronic documents and/or e-mails stored in shared or personal networks or hard copy files of the corporation or its employees that could bear on this litigation. Hilton's preservation efforts should include prevention of routine destruction of documents pursuant to the corporation's regular document retention policies or the non-intentional deletion of electronically-stored information by automatic processes.

The documents that Starwood may seek in connection with this proceeding include but are not necessarily limited to the following:

• Personnel files of Jeffrey Darnell, Amar Dalvani, Erin Shaffer, and Stephanie Heer;

Richard M. Lucas, Esq.
November 17, 2008
Page 2

- Documents or e-mails concerning Hilton's hiring and recruitment of Jeffrey Darnell, Amar Dalvani, Erin Shaffer, and Stephanie Heer;

- E-mails from or to Ross Klein, including indirectly to Mr. Klein as a recipient who was "cc'd" or "bcc'd," concerning Hilton's hiring and recruitment of Jeffrey Darnell, Amar Dalvani, Erin Shaffer, and Stephanie Heer;

- Documents or e-mails concerning any attempted recruitment by Hilton of any other person who at the time of the recruiting effort, was a management level employee of Starwood, whether or not that person was actually hired by Hilton; and

- Documents or e-mails concerning any other person who at the time of his or her hiring or immediately preceding his or her hiring by Hilton, was a management level employee of Starwood.

We are sure that you understand that the destruction or alteration in any way of documents that may be needed by Starwood as evidence in a legal proceeding is a serious matter and may be wrongful. Now that this matter has been brought to Hilton's attention, we expect its full cooperation.

Very truly yours,

Michael Starr

MS:scc

cc: Jamie E. Balanoff, Esq.

EXHIBIT 6



**Hilton**

February 5, 2009

Kenneth S. Siegel
Chief Administrative Officer & General Counsel
Starwood Hotels and Resorts Worldwide, Inc.
1111 Westchester Avenue
White Plains, NY 10604



The Hilton Family



Dear Ken:

    In connection with an arbitration proceeding that Starwood has pending against Ross Klein, you requested that Hilton Hotels Corp. preserve all potentially responsive documents and information in our possession, custody and control. In the process of implementing a litigation hold of such materials, we learned that Ross had certain materials that he developed or obtained while working for Starwood. Starwood apparently boxed up and shipped most of the materials to Ross at Hilton after he left Starwood and after Starwood barred him from entering his office. Based on a cursory review of these documents by counsel, it appears that at least some of the materials might be the type that Ross's separation agreement with Starwood requires him to return to Starwood. With the concurrence of Ross and his attorneys, we are returning them to you.

    After learning about the materials that Ross had, Hilton's Legal Department took possession of the materials and restricted access to them. Hilton's Legal Department also inquired whether other Hilton employees who formerly worked for Starwood had similar materials, and we determined that some of them also brought to Hilton documents or materials that they developed or acquired while they worked for Starwood. Hilton's Legal Department similarly took possession of those materials, preserved them, and restricted access to them. We also are taking steps to ensure that no such materials remain at Hilton.

    In short, we have conducted a diligent and thorough search of physical and electronic files to collect documents and materials brought to Hilton by former Starwood employees. Enclosed with this letter are the materials we have collected, along with some additional materials that certain of the former Starwood employees had at home. While much of the materials appear to be publicly available or historic in nature, and seem to be neither sensitive nor confidential, we are returning them nonetheless in an abundance of caution.

Sincerely,

Richard M. Lucas
Executive Vice President, General
Counsel and Corporate Secretary

Encls.
Cc: Ronald J. Nessim (without encls.)

CONRAD
HOTELS & RESORTS



DOUBLETREE



EMBASSY
SUITES





Hilton
Garden Inn



Hilton
Grand Vacations

HOMEWOOD
SUITES



THE
WALDORF=ASTORIA
COLLECTION

USA

official sponsor

{000011-999999 RS9002.DOC; 1}

Hilton Hotels Corporation World Headquarters
9336 Civic Center Drive · Beverly Hills, CA 90210
· hiltonfamily.com